■ HEMPSTEAD PARK ASSOCIATES, LLC, Respondent, v SUNSHINE CARE CORP., Appellant. [804 NYS2d 71]—

Judgment, Supreme Court, New York County (Charles E. Ramos, J.), entered August 31, 2004, awarding plaintiff $578,657.53, and bringing up for review an order, same court and Justice, entered August 25, 2004, which granted plaintiff's motion for summary judgment in this action to recover a down payment, unanimously affirmed, without costs. Appeal from the aforesaid order unanimously dismissed, without costs, as subsumed in the appeal from the judgment.

On September 21, 2001, the parties entered into an agreement for the purchase by plaintiff of a nursing home and related assets owned by defendant. Plaintiff made a down payment to defendant of $500,000 on the total purchase price of $7,576,000. Pursuant to the agreement, plaintiff was to apply to the New York State Department of Health for establishment and licensure as the new operator of the nursing home, and authorization by the Department of Health of such establishment was a condition precedent to the closing of the transaction. The agreement provided that "[i]n the event the Department of Health has not issued a non-contingent written approval of the Application within fourteen (14) months of the date of this Agreement, any party to this Agreement shall have the right to terminate this Agreement upon ten (10) days written notice to the other parties" (§ 12.2).

The agreement further provided, in pertinent part: "In the event of the termination of this Agreement, the Downpayment shall be returned to Buyer, unless . . . such termination is by Seller pursuant to Section 12.2 hereof and the Department of Health has recommended disapproval of the Application based upon either (i) the [A]pplicant's unsatisfactory character and

competence or (ii) the [A]pplicant's failure to satisfactorily demonstrate sufficient funds for required equity or working capital contribution" (§ 12.4.1.2).

"In the event the provisions of Section[ ] . . . 12.4.1.2 shall apply, the entire Downpayment, together with all interest earned thereon, shall be paid to and retained by Seller as liquidated damages" (§ 12.4.2).

Fourteen months after the date of the agreement, by letter dated November 21, 2002, defendant terminated the agreement, effective 10 days thence, on the stated grounds that the Department of Health had not issued a noncontingent approval of plaintiff's application. Defendant advised that, pursuant to sections 12.4.1.2 and 12.4.2 of the agreement, it was retaining the down payment, with all interest earned thereon, as liquidated damages.

The establishment of a nursing home is governed by Public Health Law § 2801-a and requires the written approval of the Public Health Council (PHC), a statutory body within the Department of Health (Public Health Law § 220). Before the PHC acts on an application for establishment, the State Hospital Review and Planning Council (SHRPC), another statutory body within the Department (Public Health Law § 2904), and the health systems agency having geographical jurisdiction of the area where the proposed facility is to be located must have had a reasonable opportunity to review the application and submit their recommendations (Public Health Law § 2801-a [2]).

The PHC may not take any action contrary to the advice of either the SHRPC or the health systems agency until it affords to either an opportunity to request a public hearing and, if so requested, a hearing is held, and if it "proposes to disapprove the application," the PHC must afford the applicant an opportunity to request a public hearing (id.). The PHC may not approve an application for establishment unless it is satisfied as to (a) the public need for the nursing home at the time and place and under the circumstances proposed, (b) the character, competence and standing in the community of the proposed operator, (c) the financial resources of the proposed home and its sources of future revenues, and (d) any other matter it deems pertinent (Public Health Law § 2801-a [3]).

The parties' agreement contemplates defendant's retention of the down payment in the event that the agreement is terminated by defendant because the Department of Health has not issued a noncontingent written approval of plaintiff's application within 14 months of the date of the agreement and the Department of Health has "recommended disapproval" of the applica-

tion based upon either the applicant's unsatisfactory character and competence or its failure to satisfactorily demonstrate sufficient funds for required equity or working capital contribution.

The term "Department of Health" is defined in the parties' agreement as "the New York State Department of Health and, *when applicable,* the Public Health Council of the State of New York *and all other New York State agencies and authorities having jurisdiction over health care facilities*" (§ 1.6 [emphasis added]). Pursuant to the governing statute, the state agency or authority having jurisdiction over health care facilities that makes recommendations as to approving establishment applications is the SHRPC (Public Health Law § 2801-a [2]). The PHC, as indicated, either approves or disapproves those applications (*id.*). If it "proposes to disapprove" an application, it must afford the applicant an opportunity to request a public hearing (*id.*). As to plaintiff's application, the SHRPC in fact recommended approval. Thus, the provisions of the agreement that contemplate defendant's retention of the down payment in the event that the Department of Health has "recommended disapproval" were not invoked.

Moreover, while the Department of Health had not issued a noncontingent written approval of plaintiff's application within 14 months of the date of the parties' agreement, neither had the PHC proposed to disapprove the application because of plaintiff's unsatisfactory character and competence or its failure to satisfactorily demonstrate sufficient funds for required equity or working capital contribution. On November 19, 2002, two days before defendant terminated the agreement, the PHC had written that it was "considering disapproval" of plaintiff's application. The letter said that the questions considered by the PHC included (a) whether there was a public need for the facility, (b) whether there were adequate financial resources for the facility, and (c) whether the applicant had good character, satisfactory competence and standing in the community. These questions are the very factors that the statute requires the PHC to consider (Public Health Law § 2801-a [3]). However, since the PHC did not identify which, if any, of these factors was not satisfactory and therefore caused it to consider disapproval of the application, the provisions of the agreement that contemplated defendant's retention of the down payment on the ground that the Department of Health was not satisfied with either plaintiff's character and competence or its financial condition were not invoked.

Defendant's attempt to raise an issue of fact is unavailing.

Defendant argues that the transcripts of the October 22, 2002 and November 15, 2005 meetings of the PHC's Establishment Committee show that the basis for the PHC's disapproval was its finding that plaintiff did not have sufficient funds to proceed with the transaction. The transcripts reflect that the committee discussed the financial structure of the transaction and its ramifications for "rebasing" the Medicaid reimbursement rate for the nursing home. However, the inference that the committee's true concern was plaintiff's failure to satisfactorily demonstrate sufficient funds for required equity or working capital contribution is speculative and unsupported by the evidence. Concur—Mazzarelli, J.P., Andrias, Ellerin, Gonzalez and McGuire, JJ.